IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br> v. <br> **GLENN EDWARDS** | **CRIMINAL ACTION NO. 14-223** <br><br> **CIVIL ACTION NO. 19-896** |

**MEMORANDUM OPINION**

Rufe, J.                                                                                                                                              March 30, 2022

After a jury trial, Defendant Glenn Edwards was convicted of distribution of a controlled substance and possession of a controlled substance with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Counts 1 and 2); possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c) (Count 3); and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g) (Count 4). Mr. Edwards has filed a motion pursuant to 28 U.S.C. § 2255, asserting that his trial and appellate counsel were ineffective and that his right to a speedy trial was violated.[1] For the reasons set forth below, the Court will hold a hearing as to certain claims of ineffective assistance of counsel.

     **I.     LEGAL STANDARD**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner serving a sentence in federal custody may petition the court which imposed the sentence to vacate, set aside, or correct the sentence by asserting that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to

---

[1] The petition was filed *pro se*; new counsel later entered an appearance and was granted leave to file an amended petition but notified the Court that according to Defendant's wishes, no amended petition would be filed. *See* Doc. No. 167.

impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."[2] "Habeas corpus relief is generally available only to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure."[3]

When considering a motion under § 2255, "[a] district court must hold an evidentiary hearing unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."[4] In determining whether a hearing is necessary, "the district court must consider as true all appellant's nonfrivolous factual claims. . . . [and] must determine whether, on the existing record, those claims that are nonfrivolous conclusively fail to show" any entitlement to relief. [5] If the motion "alleges any facts warranting relief under § 2255 that are not clearly resolved by the record," the district court is "obliged to follow the statutory mandate to hold an evidentiary hearing."[6] Bald assertions and conclusory allegations do not suffice to compel an evidentiary hearing.[7]

## II.     BACKGROUND

The Court appointed four attorneys to represent Mr. Edwards in this case. The initial appointed counsel, Rossman Thompson, Esq., moved to withdraw because of a conflict of interest, and David Walker, Esq. was appointed. Mr. Walker represented Defendant through

---

[2] 28 U.S.C. § 2255(a).

[3] *United States v. DeLuca*, 889 F.2d 503, 506 (3d Cir. 1989).

[4] *United States v. Scripps*, 961 F.3d 626, 631-632 (3d Cir. 2020) (internal quotation omitted).

[5] *United States v. Arrington*, 13 F.4th 331, 334 (3d Cir. 2021) (internal quotation omitted).

[6] *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005).

[7] *United States v. Donahue*, 792 F. App'x 165, 168 (3d Cir. 2019).

several pretrial motions, including a motion to suppress. As the case drew closer to trial, Defendant sought new counsel, and Sharif Abaza, Esq. was appointed. After the jury found Defendant guilty of all charges, Mr. Edwards again requested new counsel, and Carina Laguzzi was appointed, who represented Defendant through post-trial motions, sentencing, and on direct appeal.

The Court denied the motion to suppress after an evidentiary hearing. The evidence at the suppression hearing showed that the police conducted searches of Mr. Edwards's trash after he was implicated in selling significant quantities of marijuana. The Court found credible the testimony of Philadelphia police officer Michael Williams that he conducted three separate "trash pulls" in the early morning hours of July 11, 2013, July 25, 2013, and August 15, 2013, in which he removed trash bags from behind Defendant's home, and that inside the trash bags were small plastic bags containing marijuana residue. Defendant testified at the suppression hearing that his garbage was not moved to the location testified to by Officer Williams until approximately 7:30 a.m. on the day of collection. The Court found as a matter of fact that the trash bags had been left outside the curtilage of the home and were therefore abandoned, and thus the warrantless search of Defendant's trash did not violate his right to be secure in his property.[8] The Court also rejected Defendant's argument that the warrant obtained as a result of the trash pulls and evidence of a drug transaction several months earlier was stale.

At trial, Detective Iran Millan testified that as a Philadelphia police officer he accompanied the confidential informant to the drug buy on February 14, 2013.[9] Detective Milan testified that the informant called Mr. Dudney and that Mr. Dudney called his supplier, who

---

[8] Doc. Nos. 56, 57.

[9] Tr. Dec. 9, 2015 [Doc. No. 107] at 52.

3

arrived in a black Ford Fusion.[10] Mr. Dudney met with the driver in the Ford and then gave the informant a brown paper bag that contained marijuana in a Ziploc bag.[11]

Officer Williams, who had testified during the suppression hearing, also testified at trial. Officer Williams was present at the drug buy outside Mr. Dudney's house on February 14, 2013.[12] The Ford Fusion was registered to Wanda Glover.[13] Officer Williams testified that he got a good look at the driver of the Ford Fusion on February 14, 2013, and that he and other officers followed the car back to Mr. Edwards's house that day.[14] Officer Williams conducted surveillance of the home on occasion over the next several months, and always saw Mr. Edwards use the back entrance.[15] In August of 2013, Officer Williams obtained a search warrant for the home and on August 16, 2013, Mr. Edwards was detained after driving away from the property.[16] Mr. Edwards gave the officers a key, and during the day on August 16, 2013, they entered the house through the back basement door.[17] Ashleigh Wilhelm (Defendant's adult daughter) was on the second floor of the home and cooperated with the police.[18]

---

[10] Tr. Dec. 9, 2015 [Doc. No. 107] at 64–65

[11] Tr. Dec. 9, 2015 [Doc. No. 107] at 67.

[12] Tr. Dec. 9, 2015 [Doc. No. 107] at 99–100.

[13] Ms. Glover is married to Mr. Edwards. The Ford Fusion was registered to their home address. Tr. Dec. 9, 2015 [Doc. No. 107] at 111-12

[14] Tr. Dec. 9, 2015 [Doc. No. 107] at 113-14. Officer Richard Gramlich testified at trial that he followed the black Ford Fusion on February 14, 2013, and got a good look at Mr. Edwards when he got out of the Ford Fusion at his home. Tr. Dec. 9, 2015 [Doc. No. 107] at 240-41. Officer Gramlich also testified that someone got into the car at the corner of Broad and Erie but that no one entered or exited the driver's side of the car until it arrived at the Edwards house. Tr. Dec. 9, 2015 [Doc. No. 107] at 241-42.

[15] Tr. Dec. 9, 2015 [Doc. No. 107] at 119.

[16] Tr. Dec. 9, 2015 [Doc. No. 107] at 120–21.

[17] Tr. Dec. 9, 2015 [Doc. No. 107] at 121–22.

[18] Tr. Dec. 9, 2015 [Doc. No. 107] at 123.

Officer Williams testified that during the search of the basement (which he described as "like a man cave"),[19] the police recovered boxes of clear bags with Ziploc-type closures, a digital scale, marijuana residue, plastic bins, and inside the rear portion of a bar pushed up against the wall, more than $16,000 in cash and a sock containing a .45 caliber handgun loaded with seven rounds of ammunition and an additional magazine with seven rounds.[20] Also recovered from the basement was a black duffle bag containing 16 Ziploc bags of marijuana.[21] The money was deposited in the bank pursuant to the City of Philadelphia's procedures.[22]

Barrington Dudney testified pursuant to subpoena.[23] Mr. Dudney testified that he helped his brother-in-law purchase two pounds of marijuana from Mr. Edwards.[24] Mr. Dudney visited Mr. Edwards's home approximately five times; he always entered through the back door and saw marijuana in plastic bins in the home.[25] Mr. Dudney also saw what he believed to be a .45 caliber gun in the basement of the Edwards home.[26] He testified that Mr. Edwards told him that he had the gun to protect his business, meaning the auto garage, and that he knew Mr. Edwards as a businessman, not a drug dealer.[27] Mr. Dudney admitted that he had testified truthfully before the grand jury that Mr. Edwards told him that "[o]nce upon a time him and somebody had some argument about marijuana so he was watching his back."[28] On cross-examination, counsel asked

---

[19] Tr. Dec. 9, 2015 [Doc. No. 107] at 125.
[20] Tr. Dec. 9, 2015 [Doc. No. 107] at 127–29.
[21] Tr. Dec. 9, 2015 [Doc. No. 107] at 133, 136.
[22] Tr. Dec. 9, 2015 [Doc. No. 107] at 175–76.
[23] Tr. Dec. 9, 2015 [Doc. No. 107] at 183–87.
[24] Tr. Dec. 9, 2015 [Doc. No. 107] at 188–89.
[25] Tr. Dec. 9, 2015 [Doc. No. 107] at 191–92.
[26] Tr. Dec. 9, 2015 [Doc. No. 107] at 195–96.
[27] Tr. Dec. 9, 2015 [Doc. No. 107] at 198.
[28] Tr. Dec. 9, 2015 [Doc. No. 107] at 201.

Mr. Dudney about his deposition,[29] in which he testified that the arresting officer forced him to go to the grand jury and told him he must "do good," which Mr. Dudney took to mean "say the right thing."[30] After presenting forensic testimony, the government rested. The defense did not present witnesses. The jury convicted Mr. Edwards on all counts.[31]

After trial, Defendant filed a *pro se* motion for a new trial. At Defendant's request, the Court appointed Ms. Laguzzi to represent Mr. Edwards. Ms. Laguzzi sought a new trial on Count 3, which charged that Defendant knowingly possessed a firearm in furtherance of a drug trafficking crime. The Court denied the motion, determining that the evidence at trial showed that significant drug activity was being conducted in the finished basement of Defendant's home, that the weapon was loaded and ready for use in close proximity to drugs and drug profits, and that as a convicted felon, Defendant was not legally entitled to possess a firearm.[32] Ms. Laguzzi pressed the same issue on appeal, and the Court of Appeals affirmed.[33]

### III.   DISCUSSION

#### A.  Ineffective Assistance of Counsel: Failure to Investigate

Mr. Edwards argues that his attorneys failed to interview and present witnesses at the suppression hearing, when he was represented by Mr. Walker, and at trial, when he was represented by Mr. Abaza. The Court will first review the affidavits Defendant attached to his supplemental filings that provide evidence that Mr. Edwards argues his attorneys failed to investigate before trial.

---

[29] Mr. Dudney had been deposed to preserve his testimony in the event he was deported before trial.

[30] Tr. Dec. 9, 2015 [Doc. No. 107] at 208–09.

[31] The felon-in-possession count was bifurcated from the other counts.

[32] Doc. No. 113.

[33] *United States v. Edwards*, 717 F. App'x 166 (3d Cir. 2017).

*1. Claims regarding the drug transaction on February 14, 2013*

Mr. Edwards has submitted statements of Ricardo and Rosalyn DeSouza, who are Defendant's brother and sister-in-law.[34] The affidavit of Ms. DeSouza is dated March 7, 2019, long after the events in question. The statement of Mr. DeSouza is not signed or dated. The documents state that on February 14, 2013, the DeSouzas were working at Defendant's mechanic shop, and that Mr. Edwards was there all day. Ms. DeSouza avers that a customer, a Mr. Simon, dropped off his car for the day and requested a loaner car. Mr. Edwards authorized Ms. DeSouza to rent his Ford Fusion to Mr. Simon, and that she saw that Mr. Simon had a box containing brown bags with marijuana and a gun. Mr. Simon had the car from 7:19 a.m. until 5:32 p.m., and when Mr. Simon returned the car it smelled strongly of marijuana. Ms. DeSouza avers that Mr. Edwards was at the shop from 7:00 a.m. until 6:00 p.m., and remembers that he purchased roses "from a lady" for his wife and that Ms. DeSouza ordered lunch for Mr. Edwards and Mr. DeSouza. Ms. DeSouza also avers that she took a call from Mr. Dudney, who was looking for Mr. Simon, for whom Mr. Dudney worked.

Mr. DeSouza's unsigned statement is to the same effect, and adds that after Mr. Dudney's arrest in the summer of 2013, Mr. Simon stated that Mr. Dudney better not snitch on him for his own good. Mr. DeSouza states that Mr. Simon was later killed in connection with his drug affairs (how Mr. DeSouza knows this is not in the statement). Mr. DeSouza states that he called Mr. Edwards's attorney (he does not identify when this happened or which attorney he called), offered documents, and told him that he wanted to testify but that his call was not returned.

---

[34] All of the affidavits discussed in this section are attached as Exhibits to "Movant's Motion to Reply to the Government's Opposition Motion to Movant's § 2255" [Doc. No. 141].

### 2. *Claims regarding the trash pulls in July and August of 2013*

Defendant argues that Mr. Walker and Mr. Abaza failed to explore that Officer Williams gave conflicting testimony at a preliminary hearing in state court, and failed to interview witnesses who would have supported Defendant's testimony at the suppression hearing that the City of Philadelphia prohibits putting out trash for collection before 7:00 a.m. on the designated collection day, and that Defendant's trash would not have been off the curtilage of his property during the early morning hours as Officer Williams testified. Ashleigh Wilhelm, Defendant's adult daughter, submitted an affidavit dated February 25, 2019, stating that it is her job to place the trash outside and that she never does so before 7:00 a.m. on collection day.

### 3. *Claims regarding the search of Defendant's house on August 16, 2013*

Ms. Wilhelm was home when the police executed the search warrant on August 16, 2013. In her affidavit, she states that minutes before the search she was doing laundry in the basement and that there was nothing on the table where the police said they found the gun, money, and drugs, and that the police planted evidence. Ms. Wilhelm states that the police and fire department broke into the family's safe, causing serious damages, took the money out and photographed it. Mr. Edwards also submitted the undated statement of his wife, Wanda Glover-Edwards, who states that before she left the house that day there were no drugs, guns, or money in the basement. Ms. Glover-Edwards states that after the money was taken from the safe she received a notice of forfeiture hearing from the Court of Common Pleas of Philadelphia County in the amount of $16,553 and $770 found in Defendant's pocket.[35] Ms. Glover-Edwards states

---

[35] In her affidavit, Ms. DeSouza states that Mr. Edwards received $700 in a business transaction on August 15, 2013.

that this was her children's college money, and that an assistant District Attorney offered her a settlement of $5,000, later raised to $8,000.[36]

Mr. Edwards argues that the statements establish that his attorneys failed to conduct an investigation that would have undermined the government's case. He specifically alleges that he asked Mr. Walker to produce additional evidence for the suppression hearing and that he provided Mr. Abaza with information with regard to his alibi on February 14, 2013, as well as other leads to pursue.[37] The government argues that the witnesses would not have undercut the strong evidence, including the identification of Defendant at the scene, and that Ms. Wilhelm's observation that she saw no drugs, money, or guns in the basement on the day of the search is irrelevant as the items were concealed.[38]

Under the Supreme Court's decision in *Strickland v. Washington*, counsel is presumed to have acted reasonably and to have been effective unless a petitioner can demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the petitioner.[39] Counsel's performance is only deficient when it is "outside the wide range of professionally competent assistance."[40] "An attorney cannot be ineffective for failing to raise a claim that lacks merit," because in such cases, the attorney's performance is not deficient, and would not have affected the outcome of the proceeding.[41] An ineffective assistance of counsel

---

[36] The affidavit does not state whether she received any of the funds; however, Defendant attached to his initial § 2255 motion a document that purports to be an agreement that $8,000 was returned to Ms. Glover-Edwards. Def.'s Mem. L. supp. Mot., Ex 9 [Doc. No. 129 at ECF page 149].

[37] Def.'s Mem. L. Supp. Mot. [Doc. No. 129] at 15–18.

[38] Gov't Mem. Opp. [Doc. No. 137] at 12–14. The government's response was filed before Mr. Edwards filed the affidavits, but the evidence later set forth in the affidavits had been summarized in the § 2255 motion.

[39] 466 U.S. 668, 687 (1984).

[40] *Id.* at 690.

[41] *Singletary v. Blaine*, 89 F. App'x 790, 794 (3d Cir. 2004) (citing *Moore v. Deputy Comm'r of SCI-Huntington*, 946 F.2d 236, 245 (3d Cir. 1991)).

claim is not established upon the showing that an error had an effect on the proceedings; rather, a defendant must show that there is a reasonable probability that the outcome would have been different in the absence of such errors.[42]

Ms. Wilhelm's statement regarding the trash collection is cumulative, as Mr. Edwards testified at the suppression hearing as to when the trash was put out for collection. The Court will not relitigate the suppression hearing. The statements of Ms. Wilhelm and Ms. Glover-Edwards that no drugs or money were in the basement is consistent with the evidence at trial, as the police testified that the contraband was not in plain sight in the basement but hidden in a duffel bag and behind the bar. The statements also raise issues that are unlikely to be relevant or admissible at trial, such as the disposition of the seized funds. However, Mr. Edwards has submitted statements that the Ford Fusion used in the drug transaction on February 14, 2013, had been loaned for the entire day to Mr. Simon, an associate of Mr. Dudney, that Mr. Simon had drugs and a gun when he took the car that day, and that Mr. Edwards was at the mechanic shop all day. The statements also raise the issue that Mr. Edwards had legitimate business interests that were the source of the money found in the house.[43]

"Failure to conduct any pretrial investigation is objectively unreasonable."[44] Although the statements of Defendants' family members were drafted and submitted in connection with the filing of the § 2255 motion, long after the events in question, the Court cannot dismiss the assertions out of hand and is constrained to hold a hearing under these circumstances. The hearing will be used to assess whether counsel credibly were made aware of possible avenues of

---

[42] *Strickland*, 466 U.S. at 694.

[43] At sentencing, Ms. Laguzzi pointed out to the Court that the presentence report referenced a business and commercial property, and that one of his businesses was an auto mechanic body shop, a business that often deals in cash. Tr. Mar. 31, 2017 [Doc. No. 131] at 13.

[44] *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2005).

investigation, whether, if so, counsel conducted an appropriate investigation, what strategy counsel employed in assessing information, and whether Defendant can establish prejudice. The Court will hold a hearing limited to the issues of possible alibi evidence and evidence as to the source of the seized money with regard to the representation of Mr. Edwards by Mr. Walker and Mr. Abaza.

### B. Ineffective Assistance of Counsel: Other Arguments

#### 1. Trial Claims

Mr. Edwards contends that Mr. Abaza should not have mentioned a second gun found in the house. On cross-examination, Mr. Abaza asked Officer Williams about a gun that was found in the bedroom on the second floor.[45] The testimony was brief, and a sidebar discussion indicates that Mr. Abaza's strategy was to show that no charges were brought with regard to that weapon, and that neither gun could be associated with Mr. Edwards.[46] Defendant has not shown that the strategy was unreasonable or that prejudice resulted.

Defendant also argues that Mr. Abaza failed to raise the point that certain evidence was not tested for fingerprints, and that Mr. Abaza should have used the video of Mr. Dudney's deposition during the cross examination. However, Mr. Abaza did bring out the fact that no fingerprints were on the drugs or the gun, and emphasized those issues in closing arguments.[47] Mr. Abaza also cross-examined Mr. Dudney based on the transcript of the deposition[48], and Defendant cannot show any probability that the result of the trial would have been different if the video had been played.

---

[45] Tr. Dec. 9, 2015 [Doc. No. 107] at 170–71.

[46] Tr. Dec. 9, 2015 [Doc. No. 107] at 194.

[47] Tr. Dec. 10, 2015 [Doc. No. 108] at 86–88.

[48] Tr. Dec. 9, 2015 [Doc. No. 107] at 206–07.

*2. Sentencing and Appeal Claims*

With regard to Ms. Laguzzi's representation of Defendant, Mr. Edwards argues that the attorney failed to present at sentencing evidence that the money seized by the police was obtained by legal means and that $8,000 was returned to Ms. Glover-Edwards, and that she failed to raise these issues on appeal. The question of the funds was addressed at sentencing; and counsel for the government stated that the cash was in the possession of the Philadelphia Police Department and that their procedures had to be followed, which it appears they were. Defendant has not shown any prejudice resulting from Ms. Laguzzi's representation at sentencing, and has not identified issues that could have been raised on appeal but were not.[49]

**C.   Asserted Speedy Trial Violations**

Defendant argues that his right to a speedy trial was violated first in the state court, alleging "[n]umerous intentional and malicious continuances" by the state prosecutors while waiting for the federal government to adopt the prosecution. Mr. Edwards also asserts that the continuances granted in federal court did not comply with the Speedy Trial Act.[50]

Mr. Edwards had his first appearance in federal court on May 7, 2014, and trial was listed for July 14, 2014. On June 24, 2014, Mr. Walker filed an unopposed motion for a continuance so that the defense could receive and review discovery, conduct investigation, and discuss the possibility of a non-trial disposition.[51] The Court granted the motion the same day, and the

---

[49] Ms. Laguzzi did advance an argument on appeal that Mr. Walker was ineffective for failing to argue that the warrant was stale. The Court of Appeals held that "[w]hile we normally do not address claims of ineffectiveness on direct appeal, we can do so here because the record is sufficient for us to review the claim. The record shows that the claim lacks merit as Edwards's counsel in fact raised a staleness argument. Even if his counsel had failed to pursue that argument, Edwards would not be prejudiced because the argument was meritless; the warrant contained fresh information that was lawfully collected through the search of his trash. And a July 19, 2013, interview with Dudney also yielded fresh information to support the warrant." *Edwards*, 717 F. App'x at 168 n.3 (citation omitted).

[50] 18 U.S.C. § 3161.

[51] Doc. No. 21.

speedy trial clock stopped.[52] On October 1, 2014, the Court held a hearing on Defendant's *pro se* request for new counsel and denied the request at that time.[53] On February 10, 2015, the Court set the case for trial on May 5, 2015.[54] On March 20, 2015, Mr. Walker filed the motion to suppress; and the hearing was held on April 9, 2015 and May 7, 2015, with counsel given an opportunity to submit additional supporting case law.[55] The Court denied the motion to suppress on May 29, 2015.[56] On June 2, 2015, the Court scheduled trial for June 15, 2015. On June 3, 2015, the defense filed another unopposed motion for a continuance, citing Mr. Walker's trial schedule.[57] The Court granted the motion on June 4, 2015.[58] On October 2, 2015, Mr. Edwards filed a *pro se* motion to dismiss asserting a speedy trial violation.[59] The Court held a hearing on the motion on November 2, 2015. The Court dismissed the motion without prejudice, scheduled trial for November 16, 2015, and granted Mr. Edwards's renewed request for new counsel.[60] Mr. Abaza was appointed.[61] Mr. Abaza requested a continuance on November 5, 2015, which the Court granted the same day.[62] On November 6, 2015, the Court scheduled the trial for December 8, 2015.[63] Trial commenced on that date.

---

[52] Doc. Nos. 22, 23.

[53] Doc. No. 30 (minute sheet).

[54] Doc. No. 32.

[55] Doc. Nos. 42, 48 (minute sheets); 64, 64 (transcripts).

[56] Doc. Nos. 56, 57.

[57] Doc. No. 60.

[58] Doc. Nos. 61, 62.

[59] Doc. No. 65.

[60] Doc. No. 71.

[61] Doc. No. 70.

[62] Doc. Nos. 73, 74.

[63] Doc. No. 75.

The Speedy Trial Act requires that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges."[64] "If the government fails to comply with this time limit, the Speedy Trial Act requires the dismissal of charges in the complaint, with or without prejudice."[65] The Act specifically excludes:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.[66]

Also excluded is "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."[67]

Ordinarily, the Speedy Trial Act only applies once a defendant is in federal, as opposed to state, custody. However, some federal appellate courts have recognized what is known as a "ruse exception" whereby the Speedy Trial Act "may be triggered by state detentions that are merely a ruse to detain the defendant solely for the purpose of bypassing the requirements of the

---

[64] 18 U.S.C. § 3161(b).

[65] *United States v. Dyer*, 325 F.3d 464, 467 (3d Cir. 2003) (citing 18 U.S.C. § 3162(a)(1) ("If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped.").

[66] 18 U.S.C. § 3161(h)(7)(A).

[67] 18 U.S.C. § 3161(h)(1)(D).

Act."[68] The Third Circuit has not recognized the ruse exception,[69] but has explained that even if it were to adopt the ruse exception, a defendant must make a showing of collusion or present evidence that the detention was "for the sole or primary purpose of preparing for federal criminal prosecution."[70] Mr. Edwards has not alleged any facts that would support a finding that the government "arrange[d] with state authorities to have the state authorities detain a defendant until federal authorities [were] ready to file criminal charges."[71]

Nor has Mr. Edwards shown a speedy trial violation in federal court. The clock ran from Defendant's initial appearance on May 7, 2014, until June 5, 2014, when counsel first requested a continuance. All periods of delay after that time were attributable to defense requests for continuances and defense motions. The Court determined that the continuances were warranted under the Act, and no continuances were granted because of the general congestion of the court's calendar or the lack of diligent preparation on the part of the government's attorney.[72] Defendant's motion will be denied without a hearing as to this claim.

### IV.  CONCLUSION

The Court will schedule a hearing on the claims for ineffective assistance of counsel as outlined above. The motion will be otherwise denied, including to the extent Defendant attempted to assert any additional claims.

---

[68] *United States v. Benitez*, 34 F.3d 1489, 1494 (9th Cir. 1994) (citations omitted).

[69] *United States v. Costello*, 720 F. App'x 120, 123 (3d Cir 2018); *Dyer*, 325 F.3d at 467.

[70] *Costello*, 720 F. App'x at 123 (quoting *United States v. Garcia-Martinez*, 254 F.3d 16, 20 (1st Cir. 2001).

[71] *Benitez*, 34 F.3d at 1494.

[72] *See* 18 U.S.C. § 3161(h)(7)(C).