-IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GLENN EDWARDS | CRIMINAL ACTION NO. 14-223<br><br>CIVIL ACTION NO. 19-896 |

## MEMORANDUM OPINION

Rufe, J.                                                                                    June 27, 2022

Defendant Glenn Edwards filed a motion pursuant to 28 U.S.C. § 2255.[1] The Court held a hearing on May 11, 2022, on claims that counsel were ineffective for failing to investigate witnesses. Mr. Edwards was represented by retained counsel and appeared by video at the hearing.[2] For the reasons set forth below, the petition will be denied.

### I.       LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner serving a sentence in federal custody may petition the court which imposed the sentence to vacate, set aside, or correct the sentence by asserting that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."[3] "Habeas corpus relief is generally available only to protect against a fundamental defect which inherently results in a complete miscarriage of justice

---

[1] The motion was filed *pro se*. Defendant later retained counsel, who in consultation with Mr. Edwards decided not to file an amended motion.

[2] As Mr. Edwards had been deported he appeared by video from Jamaica.

[3] 28 U.S.C. § 2255(a).

or an omission inconsistent with the rudimentary demands of fair procedure."[4] "A person seeking to vacate his conviction bears the burden of proof upon each ground presented for relief."[5] "The standard of proof in a § 2255 proceeding is by a preponderance of the evidence."[6]

## II.    PRIOR PROCEEDINGS

The Court appointed four attorneys to represent Mr. Edwards in this case. The initial appointed counsel, Rossman Thompson, Esq., moved to withdraw because of a conflict of interest, and David Walker, Esq. was appointed. Mr. Walker represented Defendant through several pretrial motions, including a motion to suppress. As the case drew closer to trial, Defendant sought new counsel, and Sharif Abaza, Esq. was appointed. After the jury found Defendant guilty of all charges, Mr. Edwards again requested new counsel, and Carina Laguzzi was appointed, who represented Defendant through post-trial motions, sentencing, and on direct appeal.

The Court denied the motion to suppress after an evidentiary hearing. The evidence at the suppression hearing showed that the police conducted searches of Mr. Edwards's trash after he was implicated in selling significant quantities of marijuana. The Court found as a matter of fact that the trash bags had been left outside the curtilage of the home and were therefore abandoned, and thus the warrantless search of Defendant's trash did not violate his right to be secure in his property.[7] The Court also rejected Defendant's argument that the warrant obtained as a result of the trash pulls and evidence of a drug transaction several months earlier was stale.

---

[4] *United States v. DeLuca*, 889 F.2d 503, 506 (3d Cir. 1989).

[5] *United States v. Keyes*, No. 93-22, 1997 WL 539688, at *1 (E.D. Pa. Aug. 12, 1997) (internal quotation omitted).

[6] *United States v. Ballard*, No. 03-810, 2017 WL 2935725, at *4 n.5 (E.D. Pa. July 10, 2017) (citing *Pazden v. Maurer*, 424 F.3d 303, 313 (3d Cir. 2005)).

[7] Doc. Nos. 56, 57.

At trial, Philadelphia police detective Iran Millan testified that as a Philadelphia police officer he accompanied a confidential informant to a drug buy on February 14, 2013.[8] Detective Millan testified that the informant called Barrington Dudney, and Mr. Dudney called his supplier, who arrived in a black Ford Fusion.[9] Mr. Dudney met with the driver in the Ford and then gave the informant a brown paper bag that contained marijuana in a Ziploc bag.[10]

Philadelphia police officer Michael Williams testified that he was present at the drug buy outside Mr. Dudney's house on February 14, 2013.[11] The Ford Fusion was registered to Wanda Glover-Edwards, Mr. Edwards's wife.[12] Officer Williams testified that he got a good look at the driver of the Ford Fusion on February 14, 2013, and that he and other officers followed the car back to Mr. Edwards's house that day.[13] In August of 2013, Officer Williams obtained a search warrant for the home and on August 16, 2013, Mr. Edwards was detained after driving away from the property.[14] Mr. Edwards gave the officers a key, and during the day on August 16, 2013, they entered the house through the back basement door.[15] Ashleigh Wilhelm (Defendant's adult daughter) was on the second floor of the home and cooperated with the police.[16]

---

[8] Tr. Dec. 9, 2015 [Doc. No. 107] at 52.

[9] Tr. Dec. 9, 2015 [Doc. No. 107] at 64–65.

[10] Tr. Dec. 9, 2015 [Doc. No. 107] at 67.

[11] Tr. Dec. 9, 2015 [Doc. No. 107] at 99–100.

[12] Ms. Glover-Edwards is married to Mr. Edwards. The Ford Fusion was registered to their home address. Tr. Dec. 9, 2015 [Doc. No. 107] at 111-12.

[13] Tr. Dec. 9, 2015 [Doc. No. 107] at 113-14. Officer Richard Gramlich testified at trial that he followed the black Ford Fusion on February 14, 2013, and got a good look at Mr. Edwards when he got out of the Ford Fusion at his home. Tr. Dec. 9, 2015 [Doc. No. 107] at 240-41. Officer Gramlich also testified that someone got into the car at the corner of Broad and Erie but that no one entered or exited the driver's side of the car until it arrived at the Edwards house. Tr. Dec. 9, 2015 [Doc. No. 107] at 241-42.

[14] Tr. Dec. 9, 2015 [Doc. No. 107] at 120–21.

[15] Tr. Dec. 9, 2015 [Doc. No. 107] at 121–22.

[16] Tr. Dec. 9, 2015 [Doc. No. 107] at 123.

Officer Williams testified that during the search of the basement (which he described as "like a man cave"),[17] the police recovered boxes of clear bags with Ziploc-type closures, a digital scale, marijuana residue, plastic bins, and inside the rear portion of a bar pushed up against the wall, more than $16,000 in cash and a sock containing a .45 caliber handgun loaded with seven rounds of ammunition and an additional magazine with seven rounds.[18] Also recovered from the basement was a black duffle bag containing 16 Ziploc bags of marijuana.[19] The money was deposited in the bank pursuant to the City of Philadelphia's procedures.[20]

Mr. Dudney testified that he helped his brother-in-law purchase two pounds of marijuana from Mr. Edwards.[21] Mr. Dudney visited Mr. Edwards's home approximately five times; he always entered through the back door and saw marijuana in plastic bins in the home.[22] Mr. Dudney also saw what he believed to be a .45 caliber gun in the basement of the Edwards home.[23] He testified that Mr. Edwards told him that he had the gun to protect his business, meaning an auto garage, and that he knew Mr. Edwards as a businessman, not a drug dealer.[24] After presenting forensic testimony, the government rested. The defense did not present witnesses. The jury convicted Mr. Edwards on all counts, and he was sentenced to a term of imprisonment of 81 months, followed by three years of supervised release.

---

[17] Tr. Dec. 9, 2015 [Doc. No. 107] at 125.

[18] Tr. Dec. 9, 2015 [Doc. No. 107] at 127–29.

[19] Tr. Dec. 9, 2015 [Doc. No. 107] at 133, 136.

[20] Tr. Dec. 9, 2015 [Doc. No. 107] at 175–76.

[21] Tr. Dec. 9, 2015 [Doc. No. 107] at 188–89.

[22] Tr. Dec. 9, 2015 [Doc. No. 107] at 191–92.

[23] Tr. Dec. 9, 2015 [Doc. No. 107] at 195–96.

[24] Tr. Dec. 9, 2015 [Doc. No. 107] at 198.

On direct appeal, the Third Circuit affirmed the judgment of conviction and sentence, rejecting arguments that the motion to suppress should have been granted and that the evidence was insufficient to prove that Defendant possessed a firearm in furtherance of a drug trafficking crime.

Mr. Edwards then sought habeas relief, arguing that he had been denied effective assistance of counsel. By Memorandum and Order dated March 30, 2022, the Court determined that a hearing was necessary with regard to certain claims of ineffectiveness by Mr. Walker and Mr. Abaza. Mr. Edwards argued that these attorneys failed to interview witnesses who could have provided an alibi and a legitimate basis for money seized.

In support of his motion, Mr. Edwards produced several statements by family members, including Ricardo and Rosalyn DeSouza, Defendant's brother and sister-in-law.[25] The signed affidavit of Ms. DeSouza is dated March 7, 2019. The statement of Mr. DeSouza is not signed or dated. According to the statements, the Ford Fusion used in the drug transaction with Mr. Dudney on February 14, 2013, had been loaned for the entire day to a customer, a Mr. Simon, who was an associate of Mr. Dudney, and Mr. Simon had drugs and a gun when he took the car that day. In addition, the statements indicate that Mr. Edwards was at the mechanic shop all day on February 14, 2013. Mr. Edwards also submitted the undated statement of his wife, Wanda Glover-Edwards, who states that before she left the house that day there were no drugs, guns, or money in the basement. Ms. Glover-Edwards states that after forfeiture proceedings in the Philadelphia Court of Common Pleas, $8,000 of the seized money was returned. Based upon these statements, the Court scheduled the hearing held on May 11, 2022.

---

[25] The statements were attached as Exhibits to "Movant's Motion to Reply to the Government's Opposition Motion to Movant's § 2255" [Doc. No. 141].

### III.    DISCUSSION

Under the Supreme Court's decision in *Strickland v. Washington*, counsel is presumed to have acted reasonably and to have been effective unless a petitioner can demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the petitioner.[26] Counsel's performance is only deficient when it is "outside the wide range of professionally competent assistance."[27] "An attorney cannot be ineffective for failing to raise a claim that lacks merit," because in such cases, the attorney's performance is not deficient, and would not have affected the outcome of the proceeding.[28] An ineffective assistance of counsel claim is not established upon the showing that an error had an effect on the proceedings; rather, a defendant must show that there is a reasonable probability that the outcome would have been different in the absence of such errors.[29] "Failure to conduct any pretrial investigation is objectively unreasonable."[30]

The only testimony offered at the hearing was that of Mr. Edwards. Mr. Edwards testified that he gave Mr. Abaza the name of eight witnesses in support of his alibi,[31] that there was a receipt of the car rental,[32] and that Mr. Edwards told Mr. Abaza that there were 13 cameras in his shop that would show that the car left the shop and Mr. Edwards was still there.[33] Mr. Edwards further testified that he gave Mr. Abaza "video and everything. My secretary gave him video"

---

[26] 466 U.S. 668, 687 (1984).

[27] *Id.* at 690.

[28] *Singletary v. Blaine*, 89 F. App'x 790, 794 (3d Cir. 2004) (citing *Moore v. Deputy Comm'r of SCI-Huntington*, 946 F.2d 236, 245 (3d Cir. 1991)).

[29] *Strickland*, 466 U.S. at 694.

[30] *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006).

[31] Tr. May 11, 2022 [Doc. No. 175] at 31.

[32] Tr. May 11, 2022 [Doc. No. 175] at 33.

[33] Tr. May 11, 2022 [Doc. No. 175] at 34.

but Mr. Abaza "refused to use all my evidence against them because he said the government has so much against me."[34]

The Court does not find the testimony of Mr. Edwards credible. Some of his testimony was flatly wrong based on the trial record. For example, Mr. Edwards testified that Ms. DeSouza appeared at the courthouse but was not allowed into the courtroom and that "they told us only my wife could be in Court, so everybody have to stay outside" and that "[t]here was too many people out there and . . . the guard told them . . . is my wife alone can go. . . ."[35] There is no evidence that this occurred and no reason why it would have occurred. The courtroom was open during the trial, and only potential witnesses would have been sequestered.[36]

Mr. Edwards also contradicted himself; he testified both that he gave the receipt for the car rental to Mr. Abaza and that Ms. DeSouza gave the receipt to Mr. Abaza.[37] Mr. Edwards testified that there were 13 cameras at the mechanic shop that would have showed that he never left the day of the controlled buy; Ms. DeSouza's affidavit only mentioned "surveillance video that could show Mr. Simon leaving with Mr. Edwards's car on February 14, 2013."[38] In addition, Mr. Edwards testified that Brian Fishman, Esq., the attorney representing him on state charges

---

[34] Tr. May 11, 2022 [Doc. No. 175] at 35.

[35] Tr. May 11, 2022 [Doc. No. 175] at 35, 36.

[36] During the trial, counsel for the government noted that Ms. Glover-Edwards was in the courtroom, and Mr. Abaza stated that "[m]y client does not wish me to call her, nor do I see a reason to." Tr. Dec. 9, 2015 [Doc. No. 107] at 3. Based on the defense's intention at the start of trial that Defendant's wife would not be a witness, she was permitted to remain in the courtroom. Tr. Dec. 9, 2015 [Doc. No. 107] at 3–4. There was no mention of anyone else, and the courtroom was not crowded.

[37] *Compare* Tr. May 11, 2022 [Doc. No. 175] at 33 lines 11-12 *with* Tr. May 11, 2022 [Doc. No. 175] at 33 lines 21-23. Mr. Edwards did not state when either event allegedly occurred. The Court recognizes that the passage of time may affect the ability to remember details, but whether Mr. Abaza or Mr. Walker spoke with Mr. or Ms. DeSouza is an important point, as it goes to the heart of the claim of a failure to investigate.

[38] Tr. May 11, 2022 [Doc. No. 175] at 66 (quoting Ms. DeSouza's affidavit).

(which were later dismissed), interviewed Ms. DeSouza.[39] However, Ms. DeSouza's affidavit does not mention speaking with any attorney representing Mr. Edwards.

Petitioner has not met his burden of establishing that his attorneys failed to conduct an investigation that would have undermined the government's case. None of the authors of the statements testified at the hearing, and therefore the statements could not be tested. Nor did Petitioner call his former attorneys to testify. The Court cannot determine what information was provided to either Mr. Abaza or Mr. Walker, or the reasons counsel may have had for not pursuing certain evidence. Based upon the record, the Court finds that Petitioner has not carried his burden by a preponderance of the evidence.[40] The motion for relief under § 2255 will be denied. An order will be entered.

---

[39] Tr. May 11, 2022 [Doc. No. 175] at 49–50.

[40] The statement from Mr. DeSouza was not signed or dated, and cannot be relied upon at all. There was no discussion of Mr. DeSouza at the hearing, or of the statement of Defendant's wife.